Moses M. Weinstein, J.
This is an article 78 proceeding to direct respondents The Department of Health of the City of New York and the American Society for the Prevention of Cruelty to Animals (ASPCA) “ to return to the petitioner certain animals * * * which appear to have been seized by the respondents and to be in custody of the respondents and, further, directing the respondents to cease and desist from interfering with the petitioner’s custody of the said animals ”.
Petitioner is the owner of the Chernik Animal Haven, an animal shelter which has been in operation for a few years, admittedly under a pet store permit. On March 7, 1972 representatives of the respondents went to the shelter for the purpose of inspecting the premises. The inspection was based on a number of complaints received from individuals and prior investigations of the society’s own agents. In fact, on May 15, 1970 the Department of Health received a citizen’s complaint of a health hazard signed by hundreds of immediate neighbors seeking the closing of the shelter. Respondents were permitted access to the entire premises by the only person in attendance. As a result of the investigation an embargo was placed against the premises; all the dogs kept there were impounded by respondent ASPCA and distributed among their pounds, and of all those animals, 23 were destroyed based on a finding that they were hopelessly diseased. The some 200 cats sheltered on the premises are apparently still there.
One procedural issue should initially be dealt with, since there is some indication in the papers submitted on this proceeding, especially those in opposition, that there is some confusion concerning the ASPCA’s authority to conduct the investigation in the absence of a warrant. The ASPCA has established contractual relations with municipalities for the seizing, impounding and humane destruction of animals. (Agriculture and Markets Law, § 120.) Section 373 (subd. 1) of the Agriculture and Markets Law provides: “Any agent or officer of the American Society for the Prevention of Cruelty to Animals * * * may lawfully take possession of any lost, strayed, homeless or abandoned animal found in any street, road or other public place.”
*712 The statute further provides, in subdivision 2, inter alia-. “ Any such agent or officer may also lawfully take possession of any animal in or upon any premises other than a street, road or other public place, which for more than twelve successive hours has been confined or kept in a crowded or unhealthy condition or in unhealthful or unsanitary surroundings * * * provided that a complaint stating just and reasonable grounds is made under oath or affirmation to any magistrate authorized to issue warrants in criminal cases”. While it would thus appear that a warrant would be required under the circumstances of the instant case, it should be noted that these sections were framed with a view toward criminal prosecution, since many of the violations constituted misdemeanors. However, while the lack of a warrant may be crucial to the determination of a motion to suppress evidence in a criminal prosecution or in a federal case for violation of the petitioner’s rights, its absence is of no import in a civil proceeding. In any event, respondents contend that the authority for taking immediate action is contained in section 3.03 of the New York City Health Code.
In this regard it should be noted that the final subdivision of section 373 of the Agriculture and Markets Law provides: “ Nothing herein contained shall restrict the rights and powers * * * derived from any other general or special law relating to the seizure or other taking of dogs and other animals by a society for the prevention of cruelty to animals and the disposition to be made of animals so seized or taken.”
The primary purpose of animal ordinances is the protection of the public from injury or damage. “ From time immemorial these animals have been considered as holding their lives at the will of the legislative power.” (7 McQuillin, Municipal Corporations, § 24.289.) Thus, statutes providing for the destruction of animals have been held to be constitutional and not violative of the due process clause, even though no provision is made for notice of the owner. (See 56 ALB 2d 1024.) Phrased another way, the property in animals is only qualified and not such as to override the police power of the State. These statutes are generally operative where there is imminent danger to the public health or in abating a public nuisance. (See New York City Health 'Code, §§ 3.03, 3.09 et seq.) “ the keeping of dogs may be a public nuisance by reason of their howling, barking and whining, the stench they cause, unsanitary conditions in which they are kept, or their disturbing of people in the réasonable use and enjoyment of *713 property, where any of these factors cause annoyance, discomfort or injury to the health or welfare of persons.” (7 McQuillin, Municipal Corporations, § 24.284.)
The regulations regarding the operation of an animal shelter are contained in the New York City Health Code. They provide, in pertinent part, as follows:
“No person shall construct or operate a shelter for homeless animals without a permit issued by the Commissioner.” (§ 161.09, subd. [b].)
# * *
“(a) A permit required by section 161.09 shall not be issued unless the applicant proves to the satisfaction of the Commissioner that the place for which the application is made does not constitute a nuisance because of its proximity to a residential, business, commercial or public building, and that the place will be maintained so as not to become a nuisance.
“(b) The owner, lessee or person in charge of any place where animals are kept pursuant to a permit required by section 161.09, shall take all measures for insect and rodent control required by Article 151 and shall conduct such place so as not to create a nuisance by reason of the noise of the animals, the escape of offensive odors, or the maintenance of any condition dangerous or prejudicial to public health.
“(e) Every place where animals are kept pursuant to a permit required by section 161.09 shall have implements and materials, such as brooms, hoses, hose-connections, vacuum cleaners where dusty conditions are found, covered metal receptacles, brushes, disinfectants and detergents, as may be required to maintain sanitary conditions. Such places shall have regularly assigned personnel to maintain sanitary conditions.” (§ 161.11.)
# # *
“A place where small animals are kept for sale, a shelter for homeless animals or a kennel or other place where animals are boarded shall meet the requirements of Article 135 governing walls, floors, ventilation, lighting and plumbing. An individual cage shall be provided and used for each dog or cat three months of age or over. The floors, walls, implements and cages in such place shall be kept clean and in good repair. Cages shall be disinfected when necessary.” (§ 161.17.)
The affidavits submitted by the representatives of the respondents paint a ghastly picture. Overcrowding of animals, improper ventilation, almost no lighting on the upper floors of the shelter, dogs uficaged or leashed to bannisters, *714 cats uncaged, animal droppings in many areas, an overwhelming stench of animal urine, animals with highly contagious -sldn diseases, malnutrition, fungus, virus and bacterial infections. In the face of the embargo against the shelter, ■the impounding of many animals and the destruction of some diseased dogs, the petitioner merely alleges that the animals are “ well-fed and well-housed”. This is clearly insufficient to create any legitimate triable issue.
This court is not, nor will it allow itself to become, the battleground for those who wish to pursue a philosophical discussion of whether it is better for animals to exist in filth and .squalor or in the absence of another alternative, be destroyed. Either fate is unjustly deserved. The responsibility for the fate of these animals is to be borne not only by this petitioner, but by all those animal owners unmindful of unborn litters who permit their animals to wander alone in pursuit of nature’s instinct and by the purchasers of animals who soon tire of them and allow- them to slip out the back door forever. Education is perhaps the best weapon of the true animal lover.
While the court must deny this application and dismiss the petition, under the unusual circumstances of this case, and being cognizant of the fact that animals are destroyed generally within five days of their confinement, unless other provision is made for them (Agriculture and Markets Law, § 374, subd. 2), it will direct the respondent not to destroy the animals already seized, unless hopelessly diseased, for 15 days from the date of the entry of the judgment herein and further, not to destroy the animals which shall subsequently be taken into their possession, unless hopelessly diseased, for the first 20 days of their confinement. In this way maybe some will eventually be saved, perhaps even through the auspices of this petitioner. A stopgap measure to be sure, but it is prompted by the sentiment that in an age of callousness and apathy someone among us must speak for the dog.